**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SOL IP, LLC,<br>    *Plaintiff*,<br><br>  v.<br><br>AT&T MOBILITY LLC,<br>    *Defendant*.<br><br>  v.<br><br>SPRINT COMMUNICATIONS CO L.P.,<br>SPRINT SOLUTIONS, INC., and<br>SPRINT SPECTRUM L.P.,<br>    *Defendants*.<br><br>  v.<br><br>CELLCO PARTNERSHIP d/b/a/ VERIZON WIRELESS,<br>    *Defendants*.<br><br>  v.<br><br>ERICSSON INC.,<br>    *Intervenor*. | Civil Action No. 2:18-cv-00526-RWS-RSP<br><br>*CONSOLIDATED LEAD CASE*<br><br>**JURY TRIAL DEMANDED**<br><br>Civil Action No. 2:18-cv-00527-RWS-RSP<br>Civil Action No. 2:18-cv-00528-RWS-RSP |

**SOL IP'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL RESPONSES TO INTERROGATORIES**

Plaintiff Sol IP, LLC ("Sol IP") files this opposition to Defendants' Motion to Compel Sol IP to Respond to Defendants' Interrogatories. Defendants' motion focuses heavily on the purported relevance of the information sought, but Federal Rule of Civil Procedure 26 requires discovery to be both relevant ***and proportional*** to the needs of the case. *See* Fed. R. Civ. P. 26(b). The three interrogatories that are the subject of defendants' motion are patently overbroad, call for hundreds of distinct answers, and ask plaintiff to engage in a burdensome analysis of

1

documents that it has already produced to defendants. Defendants' interrogatories are also disproportionate when considering the limited importance of the information sought to resolving the issues in this case. Plaintiff therefore respectfully requests that the Court deny defendants' motion to compel.

  **A. Defendants' Interrogatory No. 2 consists of multiple interrogatories and seeks a level of specificity disproportionate to the needs of the case.**

Interrogatory No. 2 requests that plaintiff identify for "each element of each asserted claim, by column, line, and/or figure number of each earlier application, all disclosures" that plaintiff contends support its claimed priority dates. Subject to its objection that this interrogatory was unreasonable, compound, and unduly burdensome, plaintiff prepared and provided a chart that identified (by date) any applicable priority application for each of its asserted claims and provided citations to the pages and figures of those applications that support those priority dates. *See* Declaration of Daniel Shih ("Shih Decl.") Ex. A. Defendants' motion to compel only attached the first page of this chart and misportrays the extent of plaintiff's response. Plaintiff's citations to specific figures, tables, and page ranges provide ample information from which defendants can evaluate how the earlier applications support plaintiff's claimed priority dates. Plaintiff's response is also consistent with the local rules, which only require disclosure of "the priority date to which each asserted *claim* is entitled," L.P.R. 3-1(e) (emphasis added), and does not require such disclosure on an element-by-element basis.

Defendants nevertheless complain that plaintiff's response did not provide citations to specific columns and rows of prior applications and that citations were not provided separately for every element of each claim. But requiring plaintiff to provide the requested information on an element-by-element basis is unreasonably burdensome and exceeds the scope of discovery imposed by Rule 26(b). For example, in *Finjan, Inc. v. ESET, LLC*, the court found that a similar

interrogatory requiring a plaintiff to map claim elements to supporting portions of earlier applications to justify priority dates was "a significant burden" and precisely the type of "scorched earth" tactic that "the changes to Rule 26 were intended to curb." No. 17-CV-183, 2018 WL 4772124, at *5 (S.D. Cal. Oct. 3, 2018). This demand for element-by-element mapping to earlier applications is also flawed because, through a single interrogatory, defendants are seeking distinct and specific responses for hundreds of claim elements. This request far exceeds the interrogatory limit agreed to by the parties and imposed by this Court. In an analogous situation, the District Court for the Eastern District of Texas held that "[w]hile Defendants may seek, in separate interrogatories, specific responses regarding specific pieces of prior art, or may seek, in a single interrogatory, a general response regarding all identified prior art, Defendants may not seek, in a single interrogatory, specific responses for every piece of prior art." *Orion IP, LLC v. Staples, Inc.*, No. 2:04-CV-297, 2005 U.S. Dist. LEXIS 48560, at *3–4 (E.D. Tex. July 7, 2005). Defendants should be similarly barred here from seeking specific responses for several hundred claim elements in a single interrogatory.

 Defendants' interrogatory is also overbroad and disproportionate to the needs of the case because it is not limited to only those claims and elements that they contend are missing in the priority application or are the subject of an invalidity contention that turns on the earlier priority date. Defendants contend that their interrogatory is appropriate because plaintiff must support its claims to priority by showing that every claim limitation is supported by written description in a prior application, but the case they rely on for this proposition concerned an invalidity challenge that hinged on whether *one* particular claim limitation was adequately supported by a provisional application. *See New Railroad Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294–95 (Fed. Cir. 2002). *New Railroad* says nothing of a party's obligations when responding to an

interrogatory, and if anything, highlights the overbreadth of defendants' request. To the extent defendants seek more specific responses, they should be required to seek that information through other means or by serving interrogatories that are tailored to specific claim elements for which defendants dispute plaintiff's claimed priority date.

      **B.    Defendants' request for licensing offers seeks information that is not discoverable or is of limited relevance.**

Interrogatory No. 9 requests that plaintiff identify all of Sol IP's and nonparty ETRI's prior agreements, offers, and negotiations for the patents-in-suit, regardless whether a license agreement was ultimately executed. As a preliminary matter, offers and negotiations that have not resulted in a license or agreement are not discoverable. *See Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011) (holding that the plaintiff's "ongoing or unconsummated settlement and licensing negotiations with the patents-in-suit are not discoverable" because they are unreliable absent a final decision and may have a chilling effect on ongoing settlement negotiations). Plaintiff should thus not be required to identify information relating to ongoing or unconsummated licensing and settlement negotiations.

And as for any offers leading up to *executed* licensing agreements, plaintiff has already produced and is continuing to produce non-privileged documents reflecting those negotiations, Shih Decl. ¶ 4, even though such documents bear minimally, if at all, on the issues in this case. In support of their argument for the relevance of this information, defendants rely on *Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*, in which the court explained that "[w]hether the license negotiations and settlement discussions are properly discoverable will likely depend on whether, *within the context of each case*, they are an accurate reflection of the patents' underlying value and whether their probative value exceeds their prejudicial effect." 854 F. Supp. 2d 427, 429

(E.D. Tex. 2012) (emphasis added). The court then further explained that, when calculating a reasonable royalty, "the negotiations behind those [signed licenses] must be viewed, as a general rule, as *less probative and more prejudicial* than the licenses themselves." *Id.* (emphasis added). Although the court ultimately required the plaintiff to produce draft license agreements and underlying settlement negotiations, the court indicated that "such production will be viewed as the exception and not the rule" and warned that "[s]ettlement negotiations are always suspect to some degree and are often littered with unreal assertions and unfounded expectations." *Id.* at 430. Here, defendants have provided no explanation why the final licensing agreements are not a reliable indicator of a reasonable royalty rate but rather demand information about negotiations simply because they "*may* shed light" on how to calculate damages. This is hardly sufficient to justify the exception to the rule articulated in *Charles E. Hill*, let alone justify defendants' demand that plaintiff provide even more information than what is already included in its production of all documents reflecting those negotiations.

Moreover, Federal Rule of Civil Procedure 33 provides plaintiff with the option of answering an interrogatory by specifying certain relevant records when the answer "may be determined by examining . . . or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Here, because plaintiff does not possess a document that provides an overarching summary of the various offers that were exchanged during negotiations with third parties regarding the patents-in-suit, Shih Decl. ¶ 5, the burden of ascertaining the answer to defendants' interrogatory is substantially the same for both parties. Accordingly, plaintiff should not be required to compile information about the offers that were exchanged when defendants can also ascertain this information by reviewing the identified documents.

### C.   Defendants' Interrogatory No. 12 is overbroad and unduly burdensome.

Defendants' Interrogatory 12 requests plaintiff to describe, at a high level of specificity, Sol IP's or ETRI's contributions to 3GPP, ETSI, or IEEE standards, including their development of the relevant technology, their decisions to contribute that technology, the documents they submitted to 3GPP, ETSI, or IEEE, as well as any other competing proposals. In response to this vastly overbroad and unduly burdensome interrogatory, plaintiff identified documents that it produced, which are also publicly available, that reflect any ETRI proposals to those standard-setting organizations or their applicable working group meetings. Now, in their motion to compel, defendants request an order compelling Sol IP to "identify the specific contributions that SOL contends ETRI made to 3GPP, ETSI, or IEEE that disclose the functionality for each asserted claim." Motion to Compel at 7. Interrogatory No. 12, however, says nothing of disclosing "the functionality for each asserted claim." It reads:

> Separately for each of the Cellular Claimed-Essential Patents-in-Suit and WiFi Claimed-Essential Patents-in-Suit, describe Your involvement in and/or Your knowledge of the development of the relevant Cellular Standard sections or relevant WiFi Standard section, including with particularity (1) Sol IP or ETRI's development of the relevant technology; (2) Sol IP or ETRI's decision to contribute the technology to 3GPP, ETSI, or IEEE, if any; (3) the relevant Documents submitted to 3GPP, ETSI, or IEEE, if any; (4) the relevant 3GPP or IEEE working group meetings, if any; and (5) any competing proposals to 3GPP, ETSI, or IEEE, if any; and identify the individuals involved or knowledgeable regarding Sol IP or ETRI's involvement in 3GPP, ETSI, or IEEE related to each Cellular Claimed-Essential Patent-in-Suit and WiFi Claimed-Essential Patent-in-Suit. For the avoidance of doubt, the "relevant Cellular Standard sections" for a Cellular Claimed-Essential Patent-in-Suit should be understood to be the sections of LTE cited in the Claim Charts attached to Sol IP's Infringement Contentions, served March 11, 2019, and any amendments thereto, and the "relevant WiFi Standard section" for a WiFi Claimed-Essential Patent-in-Suit should be understood to be the sections of 802.11ac cited in the Claim Charts attached to Sol IP's Infringement Contentions, served March 11, 2019, and any amendments thereto.

Shih Decl. Ex. B. Defendants' motion to compel a further response to Interrogatory No. 12 should be denied because this burdensome exercise has no support in the actual language of the

interrogatory. *See Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-WTL, 2019 WL 3766094, at *1 (S.D. Ind. Aug. 8, 2019) ("It was not reasonable for [the defendant] to move to compel [the plaintiff] to respond to Interrogatory No. 1 with a specificity that was not warranted by the interrogatory as [the defendant] drafted it.").

Moreover, defendants' new request calls for mapping the thousands of pages of proposals that ETRI has made to 3GPP, ETSI, and IEEE, onto hundreds of asserted claims to see which ones "disclose the functionality for each asserted claim." This extraordinarily burdensome request—a massive undertaking calling for expert analysis—is disproportionate to the needs of the case because ETRI's proposals to 3GPP, ETSI, and IEEE are at best tangential to the actual issue: whether the relevant standards (not ETRI's *proposals*) map onto the asserted claims and whether defendants' products practice those standards. *See* Fed. R. Civ. P. 26(b). To the extent defendants believe the analysis required by Interrogatory No. 12 would be actually useful to them (something they fail to show), they should be the ones to perform it. *See* Charles A. Wright et al., 8B Fed. Prac. & Proc. Civ. § 2174 (3d ed. 2019) ("As a general rule a party in answering interrogatories must furnish information that is available to it and that can be given without undue labor and expense. But a party cannot ordinarily be forced to prepare its opponent's case.").

### D. Conclusion

For the foregoing reasons, defendants' motion to compel further responses should be denied.

DATED: November 7, 2019                    Respectfully submitted,

                                           By:    */s/ Daniel Shih*

                                                  Max L. Tribble Jr.
                                                     Texas State Bar No. 20213950
                                                     mtribble@susmangodfrey.com

Joseph S. Grinstein
   Texas State Bar No. 24002188
   jgrinstein@susmangodfrey.com
Rocco Magni
   Texas State Bar No. 24092745
   rmagni@susmangodfrey.com
Bryce T. Barcelo
   Texas State Bar No. 24092081
   bbarcelo@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Kalpana Srinivasan
   California State Bar No. 237460
   ksrinivasan@susmangodfrey.com
Kathryn P. Hoek
   California State Bar No. 219247
   khoek@susmangodfrey.com
Oleg Elkhunovich
   California State Bar No. 269238
   oelkhunovich@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Daniel J. Shih
   Washington State Bar No. 37999
   dshih@susmangodfrey.com
**SUSMAN GODFREY LLP**
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

S. Calvin Capshaw
   Texas State Bar No. 03783900
   ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
   Texas State Bar No. 05770585
   ederieux@capshawlaw.com
**CAPSHAW DERIEUX LLP**

>114 East Commerce Avenue
>Gladewater, TX 75647
>Telephone: (903) 845-5770
>
>Seong Jun Park
>    edward.park@fidelis-laws.com
>**FIDELIS LAW GROUP PLLC**
>444 W Broad St Unit 426
>Falls Church, VA 22046
>Telephone: (571) 310-2302
>
>**ATTORNEYS FOR PLAINTIFF**
>**SOL IP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system and via email on November 7, 2019.

>*/s/ Daniel J. Shih*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this document is being filed under seal pursuant to the Court's authorization in the Protective Order entered in this matter.

>*/s/ Daniel J. Shih*